UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN RAGANO,<br><br>Defendant. | **MEMORANDUM & ORDER**<br>24-CR-00050 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

  Defendant John Ragano is charged with offenses arising from events that allegedly occurred between November 2022 and July 2023.  ECF No. 1 (Indictment).  Specifically, Defendant is charged with:  Extortionate Collection of Credit Conspiracy, in violation of 18 U.S.C. § 894(a)(1) (Count One); Extortionate Collection of Credit, in violation of 18 U.S.C. § 894(a)(1) (Count Two); Harassment of a Witness, in violation of 18 U.S.C. § 1512(d)(2) (Count Three); and Witness Tampering, in violation of 18 U.S.C. § 1512(b)(3) (Count Four).  *Id.*  Pending before me is Defendant's motion to dismiss all counts of the Indictment.  ECF Nos. 19, 20 (Motion to Dismiss); ECF No. 24 (Reply in Support of Motion to Dismiss).  In the alternative, Defendant moves for a bill of particulars as to Counts One, Two and Three, and to compel the government to respond to specific discovery requests.  The government opposes the motions.  ECF No. 22 (Opposition).  For the reasons set forth below, Defendant's motions are denied.

## BACKGROUND

  This is not the first time Defendant has appeared before me.  On November 28, 2022, Defendant pled guilty regarding his conduct in a different case, *United States v. Alimena, et al.*, 21-cr-466 (E.D.N.Y.).  Specifically, Defendant pled guilty to conspiring to commit fraud in connection with means of identification, in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D), and to extortionate collection of credit conspiracy, in violation of 18 U.S.C § 894(a)(1).

Defendant's conviction in that case arose from an investigation which uncovered various criminal schemes carried out by alleged members and associates of the Colombo organized crime family of La Cosa Nostra.  Defendant, an alleged member of the Bonanno crime family, allocuted to being involved in a loansharking scheme with certain Colombo crime family co-defendants.  In particular, he admitted to loaning an individual, John Doe #2[1], $150,000, and directing John Doe #2 to pay him $1,800 a week by extortionate means.  *See* Plea Hearing Tr. at 24–25, *Alimena*, 21-cr-466 (E.D.N.Y. Nov. 28, 2022).  On April 11, 2023, I sentenced Defendant to a term of imprisonment of 57 months on each count of conviction, to run concurrently, followed by a term of supervised release of three years on each count, also to run concurrently.  *See* Judgment as to John Ragano, ECF No. 456 at 2–3, *Alimena*, 21-cr-466 (E.D.N.Y. Apr. 11, 2023).[2]

       Prior to Defendant's plea and sentencing in the *Alimena* case, he was released on bond. *See* Order Setting Conditions of Release and Appearance Bond, ECF No. 175, *Alimena*, 21-cr-466 (E.D.N.Y. Dec. 17, 2021).  One of his bond conditions prohibited him from contacting any co-defendants outside of the presence of counsel and prohibited him from contacting any suspected members of organized crime.  *Id.* ¶ 2.  After Defendant was sentenced, one of the special conditions of supervised release imposed on him was that he not associate with any individual affiliated with any organized crime groups, gangs, or any other criminal enterprise. *See* Judgment as to John Ragano, ECF No. 456 at 5.

---

[1]    This individual is referred to as John Doe in the instant Indictment but is referred to as John Doe #2 in the Superseding Indictment in *United States v. Alimena, et al.*, 21-cr-466.

[2]    The Court uses page numbers assigned by the Electronic Case Files system ("ECF").

As represented by the government, the Indictment in this case involves the same John Doe victim against whom Defendant admitted to engaging in a conspiracy to collect credit by extortionate means in the *Alimena* case. ECF No. 22 at 4. The government alleges that, despite Defendant's arrest, court supervision, guilty plea, and sentence in the *Alimena* case, Defendant continued to pressure John Doe to make payments on the same $150,000 loan. *Id.* at 5. The government identifies instances between November 15, 2022, and July 5, 2023, in which Defendant, or an individual identified as Co-Conspirator #1[3], discussed the loan with John Doe. *Id.* at 5–8. John Doe consensually recorded a number of these interactions.[4] For example, Co-Conspirator #1 is recorded on March 25, 2023, saying to John Doe regarding repayment of the loan, "nobody's looking for anybody to get hurt, nobody's looking to hurt your pocket or hurt his pocket[.]" Separately, on July 5, 2023, John Doe visited Defendant at his workplace to discuss the loan. After John Doe accused Defendant of cooperating with the government, Defendant is recorded telling John Doe to take off his clothing out of concern that he was wearing a recording device. Thereafter, two men walked up behind John Doe holding a tire iron and a crowbar. The following conversation ensued:

> Ragano: You owe me my fucking money, let's see how you're gonna do when I get out.
> John Doe: Okay.
> Ragano: You want to duck me right now? Fine, that's what I want to know.
> John Doe: I'm not ducking you, I'm here, I'm here.
> Ragano: So if I fucking slap the shit out of you, you're gonna tell on me?
> John Doe: No.
> Ragano: I try to make this like a friendly thing-
> John Doe: [UI]
> Ragano: I said you give me my fucking money and we'll call it even.
> . . .

---

[3]  The government alleges that Defendant identified Co-Conspirator #1 to John Doe on November 15, 2022, as the individual who would collect the payments on the loan on Defendant's behalf. ECF No. 22 at 5.

[4]  The government has provided these audio recordings to the Court under seal, which the Court has listened to at the request of Defendant. *See* ECF No. 19 at 4 n.13.

3

> Ragano: You fucking scumbag.
> John Doe: Okay.
> Ragano: I'll see you when I get out tough guy.
> John Doe: Okay.
> Ragano: I'll see you when I get out.
> John Doe: All right.
> Ragano: Don't forget I know where you're at now.

The government alleges that the conduct underlying Counts One and Two of the Indictment involves Defendant's continued efforts to collect, by extortionate means, payments from John Doe on the $150,000 loan at issue in *Alimena*.  ECF No. 22 at 9.  The government further alleges that Counts Three and Four arise from the interactions and communications between and among Defendant, Co-Conspirator #1, and John Doe between November 2022 and July 2023, which demonstrate Mr. "Ragano's intent to hinder, delay or prevent the communication to a federal law enforcement official about Ragano's efforts to contact John Doe and to collect the money payments from John Doe for the extortionate loan, despite Ragano's guilty plea, conviction and sentence," in *Alimena*. *Id.*

## DISCUSSION

### I.     Defendant's Motion to Dismiss the Indictment

Defendant seeks to dismiss all counts of the Indictment.  With respect to Counts One and Two, Defendant argues that there are no facts alleged in the Indictment supporting the allegation that extortionate means were used to collect on one or more extensions of credit.  ECF No. 19-1 at 8.  As to Count Three, Defendant maintains that, although the Indictment provides for a time frame of November 2022 to July 2023, only one incident, on July 5, 2023, seems to be the basis for which the government brings this count.  *Id.* at 11.  Defendant argues that the recording of the July 5, 2023, conversation does not show that Defendant harassed John Doe because John Doe was the individual accusing Defendant of cooperating with the government in the first instance,

4

thereby causing Defendant, and not John Doe, to be distressed. *Id.* at 11–12. Further, as applied to both Counts Three and Four, Defendant argues that there are no facts alleged that show Defendant *knew* that John Doe was a witness. *Id.* at 13–14. Finally, Defendant argues that any allegation in Counts Three or Four asserting that he violated a condition of release by communicating with a co-defendant in *Alimena* is flawed because he did not initiate the communication with the co-defendant in numerous instances and John Doe was the individual who made false accusations about Defendant on July 5, 2023. ECF No. 19-1 at 12.

"[An] indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).[5] "[C]ommon sense and reason are more important than technicalities" and the indictment "need not be perfect." *Id.*

"It is well established that a defendant faces a high standard in seeking to dismiss an indictment." *United States v. Xu*, No. 23-cr-133-5, 2024 WL 1332548, at *1 (S.D.N.Y. Mar. 28, 2024). "Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss." *United States v. Marsalis*, 314 F. Supp. 3d 462, 465 (E.D.N.Y. 2018) (citing cases). As a result, the Second Circuit "has consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Ghayth*, 709 F. App'x 718, 723 (2d Cir. 2017).

---

[5]   Unless noted, case law quotations in this Order accept all alterations and omit all internal question marks, citations, and footnotes.

5

Applying this "high standard," Defendant's motion to dismiss is denied. The Indictment, while sparse, nevertheless plainly tracks the language of the statutes under which Defendant is charged. *See* ECF No. 1. Additionally, each count provides approximate timeframes and locations adequately identifying when and where the alleged crimes took place. *Id.* Defendant's arguments that the government has not put forth sufficient facts supporting the charges go to the sufficiency of the evidence, which is not appropriate for the Court to evaluate at this stage. As the Second Circuit has explained:

> At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial. Otherwise, we would effectively be asking district courts to engage in summary judgment proceedings—something that does not exist in federal criminal procedure.

*United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021). I find therefore that the Indictment, combined with the discovery produced by the government in this case, which includes, among other things, audio recordings, draft transcripts, communications, and the discovery produced in the *Alimena* case, provide Defendant with sufficient notice of the allegations regarding the extortionate conduct, witness tampering, and witness harassment charged in the Indictment. *See United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (finding charges of extortionate conduct in indictment combined with "discovery, including the tapes, records, and names of participants associated with the loansharking conspiracy" as providing sufficient notice of the crimes charged). Accordingly, Defendant's motion to dismiss the Indictment is denied.[6]

---

[6] Subsequent to the parties' briefing on the pending motions, Defendant submitted supplemental authority in support of his motion to dismiss, *see* ECF No. 25, citing to the Supreme Court's decision in *Montague v. United States*, No. 23-959, --- S.Ct. ----, 2024 WL 3014465 (June 17, 2024), where the Supreme Court vacated the judgment against the defendant and remanded the case to the Second Circuit "for further consideration in light of the confession of error by the Solicitor General in her brief for the United States . . . ." *Id.* at *1. The "confession of error" referred to by the Supreme Court was the government's concession that the indictment in that case "did not sufficiently allege the predicate violations reflecting a continuing

II.     **Defendant's Motion for a Bill of Particulars**

Defendant moves, in the alternative, for a bill of particulars as to Counts One, Two, and Three.  He claims that Counts One and Two "fail to contain a 'definitive written statement of the essential facts constituting the offenses charged.'"  ECF No. 19-1 at 10 (quoting  Fed. R. Crim. P. 7(c)).  Similarly, as to Count Three, Defendant argues that he is entitled to know what specific acts the government is relying on to form the basis of the harassment alleged in the Indictment.  *Id.* at 13.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that a defendant may move for a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same

---

'series of violations' of federal drug laws necessary to establish a [Continuing Criminal Enterprise] offense."  Brief for the United States in Opposition at 5, *Montague v. United States*, No. 23-959, 2024 WL 2274434, at *10.  Defendant points to Judge Jacobs's dissent in the underlying Second Circuit case and Judge Pérez's dissent from the denial of a rehearing of the case *en banc*, both of which, Defendant argues, suggest that *all* indictments must be held to the same standard as one charging a CCE offense.  *See* ECF No. 25 at 1–2 (quoting *United States v. Montague*, 67 F.4th 520, 546–47 (2d Cir. 2023) (Jacobs, J., dissenting) and *United States v. Montague*, 84 F.4th 533, 534–35 (2d Cir. 2023) (Pérez, J., dissenting)).  Defendant further argues that I should apply the analysis of those dissents to this case, and specifically dismiss the Indictment because the government has not identified the facts underlying the extortionate acts charged in the Indictment.  ECF No. 25 at 2.  The government, in response, argues that Judge Jacobs's dissent focused on an indictment charging a CCE offense, and did not suggest extending his analysis to all indictments.  ECF No. 27 at 1.  I agree with the government's analysis.  Unlike the statute at issue in *Montague*, which charged defendant with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b), the statutes under which the government indicted Defendant here do not allege that Defendant committed a "series of violations" requiring the Indictment to go "beyond the statutory text to identify the predicate . . . violations alleged to be a part of that series."  Brief for the United States in Opposition at 6, *Montague*, 2024 WL 2274434, at *11.  The Supreme Court's decision in *Montague* did not adopt the reasoning of the dissenting opinions cited by Defendant, and I find no reason to extend the otherwise binding law of the Circuit here.  *See, e.g.*, *Dawkins*, 999 F.3d at 780; *Yannotti*, 541F.3d at 127.  I therefore find the Supreme Court's decision in *Montague* to be inapposite to the case at hand.

offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  The bill of particulars cannot be used to "compel the government to provide a preview of its case or legal theories." *United States v. Mackey*, No. 21-cr-80, 2022 WL 2093012, at *2 (E.D.N.Y. May 13, 2022). Thus, it is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).  "In determining whether a bill of particulars is warranted the important question is whether the information sought is necessary, not whether it is helpful. Consistent with this principle, courts generally deny requests for bills of particulars concerning the wheres, when, and with whoms of the crime." *United States v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012).  In any event, "[t]he decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574.

      Here, I find that the government has provided Defendant with more than enough information concerning the charges and therefore deny his motion.  The government has provided Defendant with 25 audio recordings—most of which contain statements from either himself or Co-Conspirator #1, draft and partial transcripts of those recordings, text messages sent or received by Co-Conspirator #1, toll records for cellphones used by Defendant and Co-Conspirator #1, discovery from the *Alimena* case, and statements by Defendant.  ECF No. 22 at 9–10.  Moreover, as discussed above, the Indictment "identif[ies] with sufficient particularity the nature of the charge[s] pending against him," *Bortnovsky*, 820 F.2d at 574, including the alleged extortionate conduct, witness tampering, and witness harassment.  *See* ECF No. 1.  Considering the specificity of the allegations in the Indictment and the discovery that the government has provided, I find that Defendant has "received adequate information on which to prepare [his]

defenses." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006).  His motion for a bill of particulars, therefore, is denied.

### III. Defendant's Motion to Compel Discovery

Finally, Defendant moves to compel responses to two of his discovery demands.  First, Defendant seeks "all reports or any other documentation" regarding John Doe's descriptions to law enforcement about the occasions on which Defendant allegedly contacted John Doe in violation of his conditions of release pending judicial proceedings in *Alimena*.  ECF No. 19-1 at 14.  Second, Defendant requests "all agreements, reports or any other documentation" regarding the alleged granting of immunity to Co-Conspirator #1 or detailing the government's decision not to pursue charges against Co-Conspirator #1.  *Id.* at 15.

"Rule 16 of the Federal Rules of Criminal Procedure governs pre-trial discovery in criminal cases."  *See United States v. Loera*, No. 09-cr-466, 2017 WL 2821546, at *5 (E.D.N.Y. June 29, 2017).  "Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  The requests at issue here implicate Rule 16(a)(1)(E), which provides "that a defendant is entitled to obtain from the Government documents and objects that are 'within the government's possession, custody, or control' if '(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.'" *Loera*, 2017 WL 2821546, at *5 (quoting Fed. R. Crim. P. 16(a)(1)(E)).  "Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule merely because the government may be

9

able to use it to rebut a defense position." *See United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).

As to Defendant's request for documentation regarding John Doe's descriptions to law enforcement, I find this information falls squarely within the category of information not subject to disclosure pursuant Rule 16(a)(2).  Federal Rule of Criminal Procedure 16(a)(2) explicitly precludes "the discovery or inspection of reports, memoranda, or other internal governmental documents made by [a] . . . government agent in connection with investigating or prosecuting the case."  Rule 16(a)(2) also precludes "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  Statements that are made by confidential witnesses to law enforcement in relation to the case are therefore not discoverable under Rule 16(a)(2).  *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512, 514 (S.D.N.Y. 2013) (Rule 16(a)(2) prohibits the disclosure of a statement by a confidential witness to law enforcement); *United States v. Stevens*, No. 03-cr-699, 2004 WL 1516793, at *4 (S.D.N.Y. July 7, 2004) (defendant not entitled to witness statements and substance of police reports).  The government represents that it will produce such material pursuant to 18 U.S.C. § 3500 if it chooses to call John Doe, or an agent who authored a report or statement as a witness at trial.  ECF No. 22 at 21.  At this time, I have no reason to doubt that the government will comply with its disclosure obligations under 18 U.S.C. § 3500.  Accordingly, Defendant's motion to compel the government to produce at this time documentation regarding John Doe's descriptions about Defendant's interactions with him to law enforcement is denied.

With respect to Defendant's request for documentation or agreements concerning whether Co-Conspirator #1 has been granted immunity, the government contends that Defendant has not identified any basis under which this information is discoverable under Rule 16.  ECF

No. 22 at 21.  I agree.  To the extent these materials exist, the government is well aware of its obligation to turn them over under *Giglio* at the appropriate time.  *See, e.g.*, *United States v. Tufino*, No. 20-cr-81, 2020 WL 6887626, at *3 (W.D.N.Y. Nov. 24, 2020) ("The government states that it will provide *Giglio* material, *i.e.*, promises of leniency or immunity agreements with government witnesses . . . in accordance with the schedule set by the District Court and no later than when the government produces and delivers materials pursuant to 18 U.S.C. § 3500."); *United States v. Romain*, No. 13-cr-724, 2014 WL 1410251, at *4 (S.D.N.Y. Apr. 11, 2014) ("18 U.S.C. § 3500 and *United States v. Giglio*, 405 U.S. 150 (1972) do not require disclosure of the existence and substance of promises of immunity, leniency or preferred treatment until the Friday before trial.").  If such materials exist and are not produced at the appropriate time, and Co-Conspirator #1 testifies at trial, Defendant is of course free to seek any appropriate relief then.  As for now, Defendant's motion to compel these documents (to the extent they exist) is denied.

## CONCLUSION

For the reasons stated above, Defendant's motions are denied in their entirety.

SO ORDERED.

                                                */s/ Hector Gonzalez*
                                                 HECTOR GONZALEZ
                                                 United States District Judge

Dated:  Brooklyn, New York
         July 3, 2024